# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTA CONNOR, | 1:10-cv-01967-AWI-BAM |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Augusta Connor brings this action alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the California Disabled Persons Act, Cal. Civ. Code § 54, *et seq.* (the "CDPA"). (Doc. 1.) The named defendants in this action are the State of California, California Department of Corrections and Rehabilitation ("CDCR"), Valley State Prison for Women and Warden T. Hornbeak, who are collectively referred to as the "Defendants." While Plaintiff was incarcerated at the Valley State Prison for Women[1] from February 2009 to January 2010, Plaintiff alleges the Defendants failed to provide her with shower rails, a shower bench, and a high-rise toilet, resulting in her fall in a shower stall.

---

[1] The Valley State Prison for Women is a disability placement program facility and is required to make programs and services accessible to disabled inmates.

Currently before the Court is Defendants' motion for summary judgment on Plaintiff's claims. (Doc. 42.) Plaintiff filed her opposition on October 4, 2012.[2] (Doc. 44.) Defendants filed their reply brief on October 15, 2012. (Doc. 45.) On October 19, 2012, the hearing on Defendants' Motion was vacated, and the matter was referred to United States Magistrate Judge Barbara A. McAuliffe pursuant to 28 U.S.C. § 636(b) (1)(B) and Local Rule 302. (Doc. 46.) On November 21, 2013, the Court sustained one of Plaintiff's evidentiary objections, and requested additional briefing. (Doc. 47.) Plaintiff filed her supplemental opposition on December 7, 2012. (Doc. 50.)

Having considered the moving, opposition and reply papers, the declarations, exhibits and evidentiary objections[3] attached thereto, as well as the Court's file, the Court issues the following findings and recommendations.

## II.  BACKGROUND

**A.   Disability Accommodation Framework**

Under the Remedial Plan ordered in *Armstrong v. Brown*[4], N.D. Cal. No. C-94-2307 CW, verification of a disability and the provisions of reasonable accommodations are determined by a physician and documented on the inmate's Disability Placement Program Verification form. (DSUF ¶ 3; Doc. 42, Attach. 10.) Medical staff can prescribe accommodations on a

---

[2] Plaintiff's Opposition briefly alludes to violations of 42 U.S.C. § 1983. No such claims, however, are alleged in Plaintiff's Complaint and, as such, the Court will not address this issue.

[3] Plaintiff has submitted numerous objections to the declarations and exhibits attached to Defendants' Motion. (Pl.'s Opp., Doc. 44, Attach. 2.) Many of Plaintiff's objections are improper on summary judgment. For example, "objections to evidence on grounds that the evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *See Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1119–20 (E.D. Cal.2006) ("attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general . . . A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant.")  All of these objections are overruled as moot. The Court addresses Plaintiff's remaining challenges in greater detail below to the extent they are necessary to the Court's decision.

[4] *Armstrong v. Brown*, N.D. Cal. No. C 94–2307 CW ("Armstrong") is a class action concerning disability accommodations for prisoners and parolees in the CDCR. The *Armstrong* "court ordered Remedial Plan" as amended January 3, 2001 ( "Armstrong Remedial Plan") requires the CDCR "to ensure that prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and keep necessary assistive devices, and that they receive effective communication regarding accommodations." (Doc. 42, Attach. 10.)

Comprehensive Accommodation Chrono[5] if the inmate has a medical condition requiring an accommodation. (DSUF ¶ 4.) Medical chronos are issued by an inmate's physician and approved by the institution's Chief Medical Officer. (DSUF ¶ 8.)

Upon arrival at the Valley State Prison for Women, inmates are informed of the Disability Placement Program, the availability of accommodations for disabilities and other medical conditions, and the process for requesting accommodations. (DSUF ¶ 9; Declaration of Julian Martinez "Martinez Decl.," ¶ 9, Doc. 42, Attach. 4.) Inmates may request accommodation by approaching correctional staff, submitting an administrative grievance form, or submitting a Reasonable Modification or Accommodation Request form. (DSUF ¶ 5.) Verification of a disability may be required as a result of a request for reasonable accommodation. *Id.*

**B.  Background of Plaintiff's Claims**

Plaintiff was transferred to the Valley State Prison for Women on February 3, 2009. (DSUF ¶ 11.) Plaintiff had a medical transfer form indicating she required a bottom bunk and low-tier cell. *Id.;* Doc. 42, Attach. 7. Plaintiff was issued a fourteen-day bottom-bunk chrono pending further evaluation. (DSUF ¶ 12.) Other than a bottom-bunk, Plaintiff did not require any accommodations upon her arrival to the Valley State Prison for Women. *Id.*

After complaining of knee pain and requesting a shower bench, on August 12, 2009, Plaintiff saw Nurse Practitioner Michelle Ruiz. (DSUF ¶¶ 27, 32.) Ruiz prescribed Plaintiff Motrin for the pain. (DSUF ¶ 33.) Nurse Ruiz wrote on Plaintiff's medical chart that Plaintiff's chrono was to be updated to include a "shower *chair*/rails" accommodation. (Doc. 42, Attach. 7, p. 35) (emphasis added). However, Nurse Ruiz updated Plaintiff's Comprehensive Accommodation Chrono by writing a requirement for a "shower *bench*/rails" accommodation. (Doc. 42, Attach. 8, p. 5) (emphasis added).

/././

---

[5] A "Chrono" is prison parlance for a memorandum.

3

Resolving this ambiguity, Ruiz stated that "[a]lthough I wrote 'shower bench' on the accommodation chrono . . . I used the term 'bench' interchangeably with 'chair.'"[6] (Declaration of Michelle Ruiz "Ruiz Decl.," ¶ 9, Doc. 42, Attach. 5.) Ruiz further opined that, based on her evaluation of Plaintiff, "[Plaintiff] did not require a permanent bench that was available in the handicap cells at the prison. Based on [Plaintiff's] complaint of knee pain and her ability to ambulate, a portable shower chair was sufficient to provide the assistance and stability she needed to use the shower facility . . . ." *Id.*

On August 29, 2009, Plaintiff was moved to a cell that had a shower stall with a rail. Shower chairs and high toilet seats were available upon request from housing officers.[7] (DSUF ¶¶ 40; 46.) The shower stall also had a small step after the landing. (DSUF ¶ 40.) No evidence showed Plaintiff was incapable of maneuvering or traversing the single step in the shower stall.

---

[6] Plaintiff has objected to the Ruiz declaration on the grounds that there is no foundation qualifying her to express medical opinions concerning Plaintiff's need for certain accommodations. Specifically, Plaintiff objects to Ruiz's opinion that Plaintiff did not require any accommodations other than those she prescribed, and that Ruiz used the terms "chair" and "bench" interchangeably. (Pl.'s Objections, Doc. 44, Attach. 2.)

Plaintiff's objection is overruled. First, Ruiz's statement that she uses "chair" and "bench" interchangeably is not a medical opinion. Rather, it is a clarification of ambiguity created by two statements, both offered by Ruiz, concerning the type of accommodation Plaintiff's medical needs necessitated.

Second, Ruiz has been a licensed registered nurse since 2000, and in her current position, it is her responsibility to prescribe prisoner accommodations as required. (Ruiz Decl.,¶ ¶ 1-2.) In prescribing accommodations (or declining to do so), Ruiz must make medical opinions regarding the necessity of such an accommodation. Plaintiff has not offered any authority, and the Court has found none, indicating a nurse practitioner is unqualified to opine on her decision to offer an accommodation. On the contrary, cases reviewed by this Court indicate it is common practice for nurse practitioners to prescribe accommodations in matters of prisoner disability, and offer their opinions underlying their accommodation decision. *See, e.g., Haney v. Rouch,* 2012 WL 6021523 (E.D. Cal. 2012) (chronos from two nurse practitioners declining to prescribe an accommodation); *Ramirez v.Swingle,* 2012 WL 5828549 (E.D. Cal. 2012) (Chronos from multiple nurse practitioners forming the basis for proper accommodation).

Moreover, Plaintiff's objection is disingenuous. On the one hand, Plaintiff argues the Court should interpret Ruiz's provision of a "shower bench" in Plaintiff's Chrono as literally requiring a "bench." This provision, however, would necessarily be based on Ruiz's medical findings. On the other hand, Plaintiff objects to Ruiz's explanation concerning the interchangeability of the terms "chair" and "bench," as well as her opinion as to why a chair was sufficient, because Ruiz is not qualified to offer this medical opinion. Such inconsistency undermines Plaintiff's objection.

[7] In Plaintiff's Response to Defendants' Statement of Undisputed Facts, Plaintiff denies that shower chairs were available upon request, or that Plaintiff was aware shower chairs were available for her use. (Pl.'s Resp. Statement of Undisputed Facts, Doc. 44, Attach. 3.) Plaintiff, however, has not submitted any supporting evidence or declaration to support this claim. On the contrary, uncontradicted evidence before the Court demonstrates shower chairs were available to Plaintiff. *See,* Martinez Decl., Doc. 42, Attach. 4, ¶ 14 ("[Plaintiff] was moved to a cell that had a shower rail and portable shower chairs were available in the housing unit upon request to the housing officer.")

(Declaration of Nagabhushana Malakkla[8] "Malakkla Decl.," Doc. 45, Attach. 1, ¶¶ 11, 12.)

On August 17, 2009, Plaintiff filed a Reasonable Modification or Accommodation Request form, requesting a shower bench, rails and a high-rise toilet. (DSUF ¶ 39.) On three subsequent occasions, Plaintiff submitted grievances concerning her request for accommodations and requested that she be moved to another yard with a shower bench and rails. (DSUF ¶ 44.)

On September 9, 2009, Dr. Malakkla saw Plaintiff in connection with her requests for additional accommodations. (DSUF ¶ 44.) Dr. Malakkla reviewed her medical file, examined her, and concluded that she had severe degenerative joint disease of the right knee. *Id.* Dr. Malakkla placed Plaintiff in the Disability Placement Program and updated her accommodation chrono to include a high toilet, no stairs, and relatively level terrain without obstructions. *Id.*

On September 13, 2009, Connor slipped and fell in the shower. She was near the door and did not slip on the step. (DSUF ¶ 47; Medical Records 43-47; Connor Dep. 148:2-150:15, 151:19-21.) On October 12, 2009, Connor was moved to a cell having the same set-up as her previous cell, which had a shower rail, as well as portable shower chairs and high rise toilets upon request. (DSUF ¶¶ 52-54.) Plaintiff was paroled on January 2, 2010. (DSUF ¶ 54.)

### III.   DISCUSSION

**A.   Summary Judgment/Adjudication Standards**

Fed. R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. Fed. R. Civ. P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348;

---

[8] Plaintiff has objected to various portions of the Malakkla Declaration as hearsay. (Doc. 50.) Plaintiff's objection is overruled. The statements of Dr. Malakkla are not out-of-court statements offered for the truth of their content. Rather, Dr. Malakkla, as Chief Physician and Surgeon at the Valley State Prison for Women, having personally examined Plaintiff and reviewed her medical files, offered his expert medical opinions regarding Plaintiff's medical condition and the reasonableness of the medical accommodations provided to Plaintiff.

5

*International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed. R. Civ. P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

  To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

B.  **Plaintiff's Claims Under the Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act**

   1.  **Legal Standard**

Title II of the ADA and Section 504 of the Rehabilitation Act both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the Rehabilitation Act proscribes discrimination in all federally-funded programs. *Lovell v. Chandler,* 303 F.3d 1039 (9th Cir. 2002).

Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability. *See Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Similarly, to establish a violation of Section 504 of the Rehabilitation Act, a plaintiff must show that (1) she is an individual with a disability; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance. *See id.*

Because Title II of the ADA was modeled on Section 504, "courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir.1999) (citations omitted); *see also* 42 U.S.C. § 12133 ("The remedies,

procedures, and rights set forth in [Section 504] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination in violation of [Section 12132 of this title]."). Moreover, "courts routinely look to Rehabilitation Act case law to interpret the rights and obligations created by the ADA." *Zukle,* 166 F.3d at 1045 n. 11.

Like Title II of the ADA, Section 504 applies to state prisons. *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.1997). The ADA encompasses all services, programs, and activities provided by a prison to its prisoners. *See, Crawford v. Ind. Dep't of Corrs.*, 115 F.3d 481, 483 (7th Cir. 1997). Daily living activities, including the use of showers, the exchange of laundry, and the receipt of medication, constitute "services, programs, or activities" under the ADA and § 504. *See, e.g., Phipps v. Sheriff of Cook County,* 681 F.Supp. 2d 899, 916 (N.D. Ill. 2009) ("showering, toileting, and lavatory use ... regarded as programs and/or services under the ADA.")  Thus, "virtually every interaction between prison officials and disabled inmates potentially exposes the State[ ] to liability ... unless the State[ ] promptly provide[s] reasonable accommodation." *Chase,* 508 F.Supp.2d at 505 (citing *Kiman v. N.H. Dep't of Corrs.*, 451 F.3d 274, 289–90 (1st Cir. 2006); *Chisolm v. McManimon*, 275 F.3d 315, 327–30 (3d Cir. 2001)).

**2. Plaintiff's ADA and Rehabilitation Act Claims From February 3, 2009 to September 9, 2009.**

Defendants argue that Plaintiff was not disabled within the meaning of the ADA or the Rehabilitation Act prior to September 9, 2009 – the date Dr. Malakkla placed Plaintiff in the Disability Placement Program.[9]  Plaintiff has not presented any argument or evidence that she was disabled prior to September 9, 2009.

---

[9] Plaintiff's Complaint alleges that Defendants failed to accommodate her disabilities from June 2009 to January 2010. (Pl.'s Compl., Doc. 2, ¶ 22.) However, in opposing Defendant's Motion for Summary Judgment, Plaintiff's argues that "[i]t is undisputed that plaintiff was housed in accommodations that did not have shower benches, shower rails (grab bars) and high-rise toilet seats in various Buildings during her incarceration at Valley State Prison for Women "VSPW" from February, 2009 until January, 2010; denying her reasonable modification or accommodations requests in violation of ADA laws." (Pl.'s Opp., Doc. 44, Attach. 1, 2: 7-11.)  Thus, it is unclear what dates she alleges she was under a disability covered by the ADA and Rehabilitation Act.  This distinction, however, is irrelevant to the Court's analysis.  As explained below, the undisputed evidence shows Plaintiff was not disabled at any time before September 9, 2009.

8

To recover for discrimination under the ADA, Plaintiff bears the burden of proving she is disabled under the Act. *Bates v. United Parcel Serv.,* 511 F.3d 974, 988 (9th Cir. 2007) (quoting *Nunes v. Wal–Mart Stores*, 164 F.3d 1243, 1246 (9th Cir.1999)). The ADA, as amended in 2008, defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such an individual." *Id*. (quoting 42 U.S.C. § 12102(1)(A)). To determine whether an impairment substantially limits an individual, a court considers "the nature, severity, duration, and impact of the impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003). "Whether a person is disabled under the ADA is an 'individualized inquiry.' " *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)).

The undisputed evidence before the Court demonstrates that Plaintiff was not disabled prior to September 9, 2009.[10] For example, when Plaintiff was transferred to the Valley State Prison for Women on February 3, 2009, the uncontradicted evidence demonstrates Plaintiff was not disabled and that, other than a bottom bunk, Plaintiff did not require any other accommodations. (Medical Records 2-4; Central File 1; Malakkla Decl., ¶ 3) ("Prior to 2009, [Plaintiff's] knee pain was treated with medication. No evidence showed that she required or requested accommodations or walking devices. Based on the available records, [Plaintiff] did not have a disability before 2009.")

From February 7, 2009 to June 4, 2009, undisputed medical records and medical testimony demonstrate that Plaintiff was able to walk, responded well to pain medication, generally claimed to be "ok" with her knee pain and was not determined to be disabled. (Medical Records, 5-15; Malakkla Decl., ¶¶ 5-10) (After reviewing Plaintiff's medical records over this time frame, Dr. Malakkla determined Plaintiff was not disabled); (Medical Records 17) (After treating Plaintiff on March 17, 2009, Dr. Conanan noted Plaintiff was able to walk and responded well to pain medication); (Medical Records, 18-22) (Medical Records show Plaintiff did not

---

[10] Indeed, Plaintiff appears to concede she was not disabled or handicapped until September 9, 2009. *See,* Pl.'s Evidentiary Objections, Doc. 44, Attach. 2, 1: 23-27 (objecting to the declaration of Patricia Johnson as irrelevant because "the declaration is based entirely on one examination conducted on June 11, 2009 which predates the date upon which plaintiff was determined to be qualified for the Disability Placement Program as established by the medical records submitted in support of the motion"); Pl.'s Evidentiary Objections, Doc. 44, Attach. 2, 2: 14-21 (objecting to the relevance of the Ruiz Declaration for the same reason).

9

1  complain of knee pain from March 18, 2009 to May 26, 2009); (Medical Record, 23) (On June 4, 2009, Plaintiff was seen during a routine appointment and claimed to be "ok" with her knee pain.)

Dr. Malakkla reviewed medical records relating Plaintiff's interaction with Nurse Ruiz, and determined that based on the symptoms and complaints Plaintiff presented with on August 12, 2009, Plaintiff was not disabled and the accommodations she received adequately addressed her concerns. (Malakkla Decl., ¶ 10.) Plaintiff did not complain of knee pain or request medical treatment for her knee from August 13, 2009 to September 9, 2009. (Medical Records, 37-40.)

On September 9, 2009, Dr. Malakkla saw Connor in connection with her request for accommodations. Dr. Malakkla reviewed Plaintiff's medical file, examined her, and concluded that she had severe degenerative joint disease of the right knee. Dr. Malakkla placed Plaintiff in the Disability Placement Program, updated Plaintiff's Accommodation Chrono to include a high toilet, no stairs, and relatively level terrain without obstructions. (Malakkla Decl., ¶ 5; Medical Records 41-42; Central File 6-8.) The parties agree Plaintiff was disabled within the meaning of the ADA and Rehabilitation Act as of September 9, 2009.

Plaintiff has not presented any evidence to show she was disabled prior to September 9, 2009. Plaintiff has not offered any argument or evidence showing the degenerative joint disease in her right knee "substantially limit[ed] one or more major life activities," or otherwise rendered her disabled. The undisputed evidence shows Plaintiff was not disabled within the meaning of the ADA or the Rehabilitation Act prior to September 9, 2009. Accordingly, Plaintiff's claims during this time frame fail.

**3.    Plaintiff's ADA and Rehabilitation Act Claims From September 9, 2009 to January 2, 2010.**

Plaintiff argues Defendants failed to provide the proper accommodations referenced in Plaintiff's Accommodation Chrono. Specifically, Plaintiff argues the following accommodations were not reasonable: (1) a shower "chair," rather than a fixed shower "bench;" (2) a single shower rail, rather then multiple shower rails; and (3) a movable toilet chair, rather than a fixed high toilet.

I.     **Plaintiff's Accommodations Were Reasonable**

Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *Curry v. Tilton,* 2012 WL 967062 (N.D. Cal. 2012). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. *Weinreich v. Los Angeles County MTA*, 114 F.3d 976, 979 (9th Cir.1997). A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. *See Id.* at 978.

"Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (cited sources omitted). "Reasonableness 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]' " *Id.* (quoting *Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir. 2002) (internal citation and quotation marks omitted). "An accommodation is reasonable if it is 'reasonable on its face, i.e., ordinarily or in the run of cases.' " *Id*. (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

The question of whether a public entity has provided reasonable accommodation is "ordinarily a question of fact." *Fuller v. Frank*, 916 F.2d 558, 562 n. 6 (9th Cir. 1990) (citing *Reynolds v. Brock,* 815 F.2d 571, 575 (9th Cir.1987)). *Accord Crowder v. Kitagawa*, 81 F.3d 1480, 1485–86 (9th Cir. 1996) ("[W]e have held that the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry.") However, Defendants are not required to provide Plaintiff with the accommodation she preferred, but rather, Defendants were only required to provide a *reasonable accommodation. Zivkovic v. S.*

*Cal. Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.")

Plaintiff's sole argument on summary judgment is that Defendants did not provide the specific accommodations written in Plaintiff's Comprehensive Accommodation Chrono. Defendants, however, have submitted evidence indicating Plaintiff *was* provided with each accommodation provided for in Plaintiff's Chrono. Plaintiff has not provided any evidence that the accommodations provided were inferior to what was recommended in her Chrono.

Nurse Ruiz wrote on Plaintiff's medical chart that Plaintiff's Chrono was to be updated to include a "shower *chair*/rails" accommodation. (Doc. 42, Attach. 7, p. 35) (emphasis added). While Nurse Ruiz updated Plaintiff's Comprehensive Accommodation Chrono by writing a requirement for a "shower *bench*/rails" accommodation, Nurse Ruiz explained that "[a]lthough I wrote 'shower bench' on the accommodation chrono . . . I used the term 'bench' interchangeably with 'chair.'" (Ruiz Decl., ¶ 9, Doc. 42, Attach. 5.) Plaintiff has not presented any evidence to rebut Nurse Ruiz's statement that "chair" and "bench" were used interchangeably, or that by updating her Chrono with the word "bench," Plaintiff was entitled to a "fixed shower bench."

Moreover, Ruiz opined that, based on her evaluation of Plaintiff, "[Plaintiff] did not require a permanent bench that was available in the handicap cells at the prison. Based on [Plaintiff's] complaint of knee pain and her ability to ambulate, a portable shower chair was sufficient to provide the assistance and stability she needed to use the shower facility . . . ." (Ruiz Decl.," ¶ 9, Doc. 42, Attach. 5.) The undisputed evidence shows Defendants made a reasonable accommodation. Plaintiff has not submitted any evidence or argument explaining why a shower chair was insufficient to meet Plaintiff's medical needs, or that a shower bench would have satisfied Plaintiff's medical needs.

Plaintiff has not presented any evidence that the term "rails" in Plaintiff's Chrono required "multiple rails" in the shower. Defendant's have submitted the medical testimony of Dr. Malakkla, who after reviewing Plaintiff's medical file and examining Plaintiff, opined that "[b]ased on the availability of a grab bar and portable shower chair, [Plaintiff] was provided with

reasonable accommodations meeting her medical needs." (Malakkla Decl., Doc. 45, Attach. 1, ¶ 11.) The undisputed evidence shows Defendants made a reasonable accommodation. Plaintiff has not submitted any evidence or argument explaining why a single rail was insufficient to meet Plaintiff's medical needs, or that a multiple rails would have satisfied Plaintiff's medical needs.

Plaintiff's final argument is that Defendants were required to provide her with a fixed high toilet rather than a portable toilet chair. Dr. Malakkla, who personally updated Plaintiff's Chrono to include a "high toilet," declares that "[P]laintiff's housing [which included access to portable toilet seats] met all the accommodations I prescribed." (Malakkla Decl., Doc. 45, Attach. 1, ¶ 12.) The undisputed evidence shows Defendants made a reasonable accommodation. Plaintiff has not submitted any evidence or argument explaining why portable toilet seat was insufficient to meet Plaintiff's medical needs, or that a fixed high toilet seat would have satisfied Plaintiff's medical needs.

The reasonableness of an accommodation is generally an issue reserved for the fact-finder. However, Plaintiff presents no evidence that her medical condition required a fixed shower bench, multiple rails, or a fixed high toilet seat. Defendants, on the other hand, have submitted the declarations of the medical professionals who recommended the accommodations, and these medical professionals opined that the accommodations Plaintiff received satisfied both their recommendations as well as Plaintiff's medical needs. When "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103. Here, Plaintiff has not submitted any evidence concerning the reasonableness of her accommodations. The Court finds that no reasonable jury could conclude on these facts that Defendants failed to make a reasonable accommodation. *Anderson v. Liberty Lobby,* 477 U.S. at 248-50. Thus, Plaintiff has failed to raise a genuine issue of fact, and summary judgment on Plaintiff ADA and Rehabilitation Act claims is properly granted in favor of the Defendants.

        **ii.**        **Defendant's Actions Do Not Amount To Deliberate Indifference**

Damages are not available for a violation of Title II of the ADA or the Rehabilitation Act absent a showing of discriminatory intent by the defendant. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent for the purpose of recovering monetary damages, a plaintiff must establish deliberate indifference by the public entity. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2011). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at 1139; *See also, Curry v. Tilton,* 2012 WL 967062 (N.D. Cal. 2012).

The first prong is satisfied if Plaintiff identifies a specific, reasonable and necessary accommodation that Defendants failed to provide. *Duvall,* 260 F.3d at 1139. The second prong is satisfied by showing that Defendants deliberately failed to fulfill its duty to act in response to Plaintiff's request for accommodation. *Id*. at 1139–40. Defendant's duty is to undertake a fact-specific investigation to gather from Plaintiff and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" the requests of Plaintiff. *Id.*

Plaintiff's claims under the ADA and Rehabilitation Act seek damages for an alleged denial of reasonable accommodations from September 9, 2009, to January 2, 2010.[11] Thus, because this is an action for damages, Plaintiff can only prevail if she shows Defendants' actions resulted from deliberate indifference to her rights under the ADA and the Rehabilitation Act.

The undisputed evidence before the Court establishes that when Plaintiff sought accommodations for her showering and toilet needs, Defendants responded by providing reasonable accommodations – e.g., Plaintiff was moved to a cell with a shower rail, shower chairs and portable toilet seats (on the first level, where Plaintiff would not have to traverse stairs). Moreover, all the evidence before the Court – i.e., the declarations of Nurse Ruiz and Dr. Malakkla – shows the accommodations provided were reasonable. In sum, when the evidence

---

[11] Plaintiff was paroled on January 2, 2010, thus, her claims for injunctive and declaratory relief are moot. *See, Duvall,* 260 F.3d at 1132 n. 4 (because Plaintiff received the requested accommodation by the time the Court ruled, his claims for declaratory relief were moot); *Curry v. Tilton,* 2012 WL 967062 (N.D. Cal. 2012) ("His request for declaratory relief that the acts of Defendants violated federal law is dismissed as moot in light of his receipt of the requested accommodation.").

and reasonable inferences therefrom are viewed in the light most favorable to Plaintiff, no reasonable jury could find that Defendants acted with deliberate indifference towards Plaintiff.

### C. Plaintiff's Claims Under the California Disabled Persons Act

The CDPA provides that "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of [ ] public facilities ... or otherwise interferes with the rights of an individual with a disability under Sections 54 [right to streets, highways, and other public places], 54.1 [access to places of public accommodation, housing, etc.] and 54.2 [service/guide dogs] is liable for ... damages ... and attorney's fees." Cal. Civ. Code § 54.3

The CDPA is "intended to secure to disabled persons 'the same right as the general public to the full and free use' of facilities open to the public." *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal.App.4th 254, 261 (2007). Its focus is upon physical access to public places. *Turner v. Association of American Medical Colleges,* 167 Cal. App. 4th 1401, 1412 (2008). Intent is not a requirement in actions involving money damages brought under the CDPA. *See Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 177, 266 Cal.Rptr. 804 (1990) ("Viewing the statute reasonably and in a common sense fashion compels the conclusion that no intent element is set forth."); *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942 (C.D. Cal. 2004).

There are two separate and independent grounds for establishing a violation of the CDPA. A violation of the ADA standard constitutes a CDPA violation, Cal. Civ. Code § 54(c), as does a violation of state building code. *Wilkins-Jones v. County of Alameda,* 2010 WL 4780291 (N.D. Cal. 2010) (citing *Moeller v. Taco Bell Corp.*, 2007 WL 2301778 at *5 (N.D. Cal. 2007); *Arnold v. United Artists Theatre Circuit, Inc*., 866 F.Supp. 433, 439 (N.D. Cal.1994)).

There is no evidence before the Court to support a CDPA violation. As there is no violation of the ADA, there is no violation of Cal. Civ. Code § 54(c). *See Wilkins-Jones v. County of Alameda,* 2010 WL 4780291 (N.D. Cal. 2010) (denying a defendants' motion for summary judgment on a CDPA claim because there was a genuine issue of disputed fact regarding the plaintiff's ADA claims). Additionally, neither Plaintiff's complaint, nor Plaintiff's opposition papers, allege a violation of a state building code, or any other basis for a CDPA claim. *See Arnold v. United Artists Theatre Circuit, Inc*., 866 F.Supp. 433, 439 (N.D. Cal.1994)

("where a plaintiff can prove that violations of applicable California disability access standards deterred her on a particular occasion from attempting to attend a place of public accommodation, that plaintiff states a claim for relief under California Civil Code § 54.1 and § 51 and, in particular, for damages, under § 54.3 and § 52."). Accordingly, Plaintiff's CDPA claim is dismissed.

## **CONCLUSION AND RECOMMENDATION**

For the reasons set forth above, IT IS RECOMMENDED that:

1. Defendants' Motion for Summary Judgment be GRANTED;
2. Judgment be entered against Plaintiff Augusta Conner, and in favor of Defendants State of California, California Department of Corrections, Valley State Prison for Women and Warden T. Hornbeak

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 25, 2013**              /s/ **Barbara A. McAuliffe**
                                         UNITED STATES MAGISTRATE JUDGE